**No. 18-30148**

IN THE

# United States Court of Appeals

FOR THE FIFTH CIRCUIT

---

TERESA BUCHANAN,

*Plaintiff-Appellant*,

v.

F. KING ALEXANDER, DAMON ANDREW, A.G. MONACO, and
GASTON REINOSO,

*Defendants-Appellees.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA, NO. 3:16-CV-00041-SDD-EWD,
THE HONORABLE SHELLY D. DICK, PRESIDING

---

## REPLY OF PLAINTIFF-APPELLANT

---

Robert Corn-Revere
Ronald G. London
Lisa B. Zycherman
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC  20006
Tel: (202) 973-4200
Fax: (202) 973-4499

*Counsel for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

**Page**

I.    APPELLEES EFFECTIVELY CONCEDED MOST ISSUES
      ON APPEAL ........................................................................................1

II.   APPELLEES FAILED TO DEFEND THE DISTRICT COURT'S
      FLAWED FIRST AMENDMENT ANALYSIS ...........................................5

      A.    The First Amendment Protects Academic Freedom ............................5

      B.    LSU's Anti-Harassment Policies Are Facially Invalid ........................9

      C.    LSU's Policies Are Unconstitutional As Applied to
            Dr. Buchanan ......................................................................11

III.  THERE ARE NO IMMUNITY, PROCEDURAL, OR SIMILAR
      GROUNDS THAT BAR REVERSING THE DISTRICT COURT .............13

      A.    Qualified Immunity Does Not Protected Appellees ...........................13

            1.    "Federal Policy" Cannot Confer Qualified Immunity ..............14

            2.    Listing Discrete Actions By Each Appellee Cannot
                  Vitiate Violations of Clearly Established Constitutional
                  Rights ........................................................................17

            3.    Qualified Immunity Cannot Support Summary Judgment
                  on All of Dr. Buchanan's Claims ...........................................20

      B.    Appellees Are Responsible for Dr. Buchanan's Constitutional
            Injuries ...............................................................................21

      C.    None of Dr. Buchanan's Claims Are Time-Barred ............................24

CONCLUSION ..................................................................................26

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. Trustees of Univ. of N.C.-Wilmington*,
 640 F.3d 550 (4th Cir. 2011) ..............................................................7

*Bair v. Shippensburg Univ.*,
 280 F. Supp. 2d 357 (M.D. Pa. 2003)..................................................16

*Beattie v. Madison Cty. Sch. Dist.*,
 254 F.3d 595 (5th Cir. 2001) ...................................................21, 22, 24

*Booher v. Board of Regents, N. Ky. Univ.*,
 1998 WL 35867183 (E.D. Ky. July 22, 1998),
 *appeal dismissed*, 163 F.3d 395 (6th Cir. 1998)................................16

*Caleb v. Grier*,
 598 F. App'x 227 (2015) ......................................................................8

*Carey v. Piphus*,
 435 U.S. 247 (1978)............................................................................23

*Chubbuck v. Industrial Indem.*,
 953 F.2d 1386 (9th Cir. 1992) .............................................................3

*City of Riverside v. Rivera*,
 477 U.S. 561 (1986)............................................................................24

*Culbertson v. Lykos*,
 790 F.3d 608 (5th Cir. 2015) ...................................................21, 22, 25

*Cutler v. Stephen F. Austin State Univ.*,
 767 F.3d 462 (5th Cir. 2014) ..........................................................8, 17

*Davis v. McKinney*,
 518 F.3d 304 (5th Cir. 2008) ...............................................................8

*DeJohn v. Temple Univ.*,
 537 F.3d 301 (3d Cir. 2008) ...............................................................16

*Demers v. Austin*,
    746 F.3d 402 (9th Cir. 2014) ...............................................................7

*Dobson v. Camden*,
    705 F.2d 759 (5th Cir. 1983), *reh'g granted*
    *on other grounds*, 725 F.2d 1003 (5th Cir. 1984)..............................24

*Dow Chem. Co. v. Allen*,
    672 F.2d 1262 (7th Cir. 1982) ............................................................6

*EEOC v. Boh Bros. Constr. Co.*,
    731 F.3d 444 (5th Cir. 2013) .............................................................15

*Elizondo v. Parks*,
    431 F. App'x 299 (5th Cir. 2011) ......................................................8

*Esfeller v. O'Keefe*,
    391 F. App'x 337 (5th Cir. 2010) ......................................................9

*Freeman v. Gore*,
    483 F.3d 404 (5th Cir. 2007) ............................................................13

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)...................................................................*passim*

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
    313 F.3d 305 (5th Cir. 2002) ............................................................4

*Hardy v. Jefferson Cmty. Coll.*,
    260 F.3d 671 (6th Cir. 2001) ............................................................7

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982).........................................................................13

*Harris v. City of Hammond*,
    2008 WL 4469112 (E.D. La. Sept. 30, 2008)...................................16

*Hole v. Texas A&M Univ.*,
    360 F. App'x 571 (5th Cir. 2010) .....................................................4

*Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ.*,
    993 F.2d 386 (4th Cir. 1993) ............................................................16

*Jett v. Dallas Indep. Sch. Dist.*,
   798 F.2d 748 (5th Cir. 1986), *aff'd in part,
   remanded in part*, 491 U.S. 701 (1989)......................................................22, 25

*Kaprelian v. Texas Woman's Univ.*,
   509 F.2d 133 (5th Cir. 1975) ........................................................................6, 13

*In re Katrina Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) ............................................................................4

*Keyishian v. Board of Regents of Univ. of State of N.Y.*,
   385 U.S. 589 (1967)...........................................................................................5

*Kingsville Indep. Sch. Dist. v. Cooper*,
   611 F.2d 1109 (5th Cir. 1980) ............................................................6, 13, 20, 24

*Lee v. Park*,
   720 F. App'x 663 (3d Cir. 2017) ......................................................................2

*Matal v. Tam*,
   137 S. Ct. 1744 (2017)................................................................................10, 25

*McCauley v. University of V.I.*,
   618 F.3d 232 (3d Cir. 2010) .............................................................................11

*Miller v. Johnson*,
   515 U.S. 900 (1995)....................................................................................14, 15

*Miller v. Owens*,
   2011 WL 2582722 (W.D. Tex. June 29, 2011) ..................................................4

*Mt. Healthy City Sch. Dist. v. Doyle*,
   429 U.S. 274 (1977)...........................................................................................6

*Munn v. City of Ocean Springs*,
   763 F.3d 437 (5th Cir. 2014) .................................................................9, 10, 11

*Murrell v. Casterline*,
   307 F. App'x 778 (5th Cir. 2008) ................................................................2, 21

*Netherland v. City of Zachary*,
   626 F. Supp. 2d 603 (M.D. La. 2009).........................................................12, 13

*Paul v. Davis*,
    424 U.S. 693 (1976)...................................................................................16

*Pickering v. Board of Education*,
    391 U.S. 563 (1968)..........................................................................8, 11, 12

*Powers v. Northside Indep. Sch. Dist.*,
    143 F. Supp. 3d 545 (W.D. Tex. 2015) ..............................................22

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015)......................................................................25

*Reeves v. Claiborne Cty. Bd. of Educ.*,
    828 F.2d 1096 (5th Cir. 1987) ...........................................................6

*Regents of Univ. of Cal. v. Bakke*,
    438 U.S. 265 (1978)...........................................................................6

*Robinson v. Board of Sup'rs of La. State Univ.*,
    2017 WL 4049820 (E.D. La. Sept. 13, 2017)....................................23

*Rodriguez v. Maricopa Cty. Cmty. Coll. Dist.*,
    605 F.3d 703 (9th Cir. 2010) .....................................................14, 17

*Saxe v. State Coll. Area Sch. Dist.*,
    240 F.3d 200 (3d Cir. 2001) .................................................11, 14, 16

*Stinson v. United States*,
    508 U.S. 36 (1993)............................................................................15

*Street v. New York*,
    394 U.S. 576 (1969).........................................................................10

*Sweezy v. New Hampshire*,
    354 U.S. 234 (1957)...........................................................................5

*Texas v. Johnson*,
    491 U.S. 397 (1989).........................................................................13

*U.S. ex rel. Bias v. Tangipahoa Parish Sch. Bd.*,
    816 F.3d 315 (5th Cir. 2016) ..............................................................2

*United States v. Nevares-Bustamante*,
    669 F.3d 209 (5th Cir. 2012) ..............................................................15

*UWM Post, Inc. v. Board of Regents of Univ. of Wis. Sys.*,
    774 F. Supp. 1163 (E.D. Wis. 1991) ...................................................17

*van Heerden v. Board of Supervisors of Louisiana State University*,
    2011 WL 5008410 (M.D. La. Oct. 20, 2011).......................................7, 8, 18, 25

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989)................................................................................9

*Waters v. Churchill*,
    511 U.S. 661 (1994)...........................................................................15, 16

*Wiesner v. FBI*,
    2010 WL 3734097 (D.C. Cir. Sept. 23, 2010)......................................2

*Wiggins v. Louisiana State Univ.-Health Care Servs. Div.*,
    710 F. App'x 625 (5th Cir. 2017) .....................................................2, 23

*Williams v. Dallas Independent School District*,
    480 F.3d 689 (5th Cir. 2007) ...........................................................7, 8

## State Cases

*Richard v. Board of Sup'rs of La. State Univ.*,
    960 So. 2d 953 (La. Ct. App. 2007)...................................................23

## Federal Statutes

42 U.S.C. § 1983 ............................................................................20, 23

## Rules

Federal Rules of Civil Procedure
    12(b)(6) ...............................................................................................4
    12(c) ....................................................................................................4
    56(a) ...................................................................................................16

**Constitutional Provisions**

U.S. Constitution
    amend. I.................................................................................................*passim*
    amend. XI.................................................................................20, 23

**Miscellaneous**

www.cnn.com/2017/09/07/politics/betsy-devos-education-
    department-title-ix/index.html ...........................................................15

Based on the briefing, Appellant Dr. Teresa Buchanan suggests that oral argument is no longer necessary to resolve this case. While the Appellant would welcome the opportunity to address the Court in person on any of the issues on appeal, Appellees' Brief in opposition ("Opp.") fails to engage on any substantive level. Appellant explains how the case may be promptly resolved in this Reply.

## I.    APPELLEES EFFECTIVELY CONCEDED MOST ISSUES ON APPEAL

Appellant's opening brief ("Br.") explained how LSU's anti-sexual harassment policies (PS-73 and PS-95) violate the First Amendment, because they employ overly broad and vague terms that permit regulation of speech that may be considered "offensive" or "suggestive," without regard to whether targeted expression is severe, pervasive, and objectively offensive. Br. 16-30. It cited four cases that invalidated similar policies on First Amendment grounds, and explained how PS-73 and PS-95 are constitutionally defective. *Id.* 20-30. It also examined how defendants applied those policies to Dr. Buchanan in haphazard and inconsistent ways that flouted constitutional requirements, and showed that the District Court ignored record evidence to reach an incorrect conclusion. *Id.* 31-48. Finally, the opening brief explained how Appellees cannot avoid personal liability, that qualified immunity does not apply, that none of the claims are time-barred, and why defendants are individually responsible for the decision to terminate Dr. Buchanan. *Id.* 48-56.

Appellees take issue with **none** of the arguments in Dr. Buchanan's brief. In fact, their brief contains **not a single reference** to Appellant's merits brief, and does not directly address the specific arguments made. Of course, Appellees disagree with the ultimate legal conclusions advocated on appeal, but without any engagement on the issues. Some of their positions even disagree with the District Court's findings of law, without identifying or seeking to explain the disparities.[1]

What arguments Appellees do make are answered below. But it is important to note initially that the failure to respond to Appellant's arguments is by itself reason to reverse the District Court decision. It is not this Court's job to "make the parties' arguments for them," and "failure to respond to … [an] argument acts as a concession." *Lee v. Park*, 720 F. App'x 663, 666 (3d Cir. 2017); *U.S. ex rel. Bias v. Tangipahoa Parish Sch. Bd.*, 816 F.3d 315, 321 (5th Cir. 2016) (unaddressed arguments are "implicitly concede[d]"); *Wiggins v. Louisiana State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 628 (5th Cir. 2017). *See also Wiesner v. FBI*,

---

[1] For example, Appellees generically argue the First Amendment does not protect public employee speech *at all* under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), Opp. 30-32, but the District Court correctly found this Circuit recognizes *Garcetti*'s "academic freedom exception." *See* ROA.1324-1325; Br. 32 n.10, 49. Likewise, the court held Dr. Buchanan "demonstrated Article III standing to … constitutional[ly] challenge[] LSU's policies," ROA.1344, but Appellees assert she lacks standing without citing authority (or even acknowledging the decision below). Opp. 33. As Appellees "did not … cross-appeal, they are precluded from appellate review of the[se] argument[s]." *Murrell v. Casterline*, 307 F. App'x 778, 779 (5th Cir. 2008).

2010 WL 3734097, at *1 (D.C. Cir. Sept. 23, 2010) ("[B]ecause appellant failed to address the other issues raised by appellees, the court will treat th[em] as conceded."); *Chubbuck v. Industrial Indem.*, 953 F.2d 1386, at *1 (9th Cir. 1992) ("By failing to respond …, we conclude Chubbuck … conceded the point.").

Importantly, Appellant's opening brief identified multiple dispositive issues that alone constitute reversible error by the District Court, yet Appellees' do not mention them.  These include:

- The District Court erroneously applied the wrong constitutional standard reviewing Dr. Buchanan's overbreadth challenge.  Br. 23-24.

- The District Court misapplied the standard for summary judgment by failing to consider undisputed facts in the record regarding Dr. Buchanan's pedagogical purpose and by basing rulings on credibility determinations.  *Id*. 32-36.

- The District Court incorrectly concluded that Dr. Buchanan's speech was not a matter of public concern because it failed to consider record evidence and consequently declined to conduct the required constitutional analysis.  *Id*. 35-36.

Many of these points were also made by *amici* supporting Appellant, yet Appellees ignore their arguments entirely.  *See*, *e.g.*, Brief of American Ass'n of Univ. Profs. 12-19 (discussing constitutional standard governing vague and overly broad anti-harassment policies), *id*. 20-26 (discussing failure to recognize protections for Dr. Buchanan's pedagogical approach); Brief of National Ass'n of Scholars and Alliance Defending Freedom 14-19 (discussing application of wrong constitutional standard and failure to perform required analysis below); Brief of the National

Coalition Against Censorship, *et al.*, 22-28 (noting failure to protect Dr. Buchanan's pedagogical methods under applicable law).

Finally, Appellees' claim that the decision below should have been rendered based "solely" on "legal issues raised in [their] Rule 12(c) motion," Opp. 8, is non-responsive, contrary to the decision below, and wrong as a matter of law. *See* ROA.1296 n.1 (stating summary judgment standard). Where defendants "filed both a motion for a judgment on the pleadings and [for] summary judgment," the summary judgment motion "essentially supplants the motion for judgment on the pleadings" and renders it moot. *Miller v. Owens*, 2011 WL 2582722, at *2 (W.D. Tex. June 29, 2011). In any event, even if Appellees were correct and this Court applied the Rule 12(c) standard, it would mean all allegations in the complaint must be accepted as true, with all allegations viewed in a light most favorable to plaintiff.[2] Under that test, the District Court again failed to apply the proper standard, and must be reversed.

---

[2] *Hole v. Texas A&M Univ.*, 360 F. App'x 571, 572 (5th Cir. 2010). *See In re Katrina Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (under Rule 12(c), as under Rule 12(b)(6), the "central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim") (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).

## II.   APPELLEES FAILED TO DEFEND THE DISTRICT COURT'S FLAWED FIRST AMENDMENT ANALYSIS

Dr. Buchanan's opening brief devoted thirty-two pages to analyzing errors in the District Court's First Amendment reasoning and conclusions, examining the constitutional theories on which the decision was based, and distinguishing key cases the court cited.  Br. 16-48.  Rather than respond, Appellees base their First Amendment defense on a theory that the District Court rejected, and that has no basis in Fifth Circuit law:  that university professors as public employees have no First Amendment protections when engaging in academic speech.  Opp. 30-32. This erroneous premise underlies Appellees' defense of both the facial and as-applied challenges to LSU's policies.  *Id*. 36-37.

### A.     The First Amendment Protects Academic Freedom

For more than half a century it has been settled law that "[t]he classroom is peculiarly the "marketplace of ideas," *Keyishian v. Board of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603 (1967), and that the "essentiality of freedom in the community of American universities is almost self-evident."  *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957).  *See* Br. 31-32.  Appellees rely on *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and other cases having nothing to do with academic freedom to argue "Buchanan's speech, while performing her official duties of teaching and supervising students is not protected by the First Amendment."  Opp. 36.  Their position ignores both that this question was fully briefed below, *see*

ROA.288-292; 678-679, and that the District Court disagreed with them. The court recognized academic freedom "has been viewed as a special concern of the First Amendment" and "consists of 'the right of an individual faculty member to teach … without interference from … the university administration, or [] fellow faculty.'" ROA.1325 (quoting *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 312 (1978); *Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1275 (7th Cir. 1982)).

Appellees fail to acknowledge or discuss Circuit law that "classroom discussion is protected" under the First Amendment. *Kingsville Indep. Sch. Dist. v. Cooper*, 611 F.2d 1109, 1113 (5th Cir. 1980) (applying *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274 (1977)).[3] *Cooper* involved a First Amendment claim by a high school history teacher terminated for an in-class role-playing exercise that "evoked strong student feelings on racial issues" after supervisors told him "nothing controversial should be discussed in the classroom." *Id*. at 1111. This Court affirmed equitable awards of reinstatement and back-pay, finding "discharge for discussions … in the classroom cannot be upheld unless the discussions 'clearly … over-balance (her) usefulness as an instructor.'" *Id*. at 1113-14 (quoting *Kaprelian*, 509 F.2d at 139).

---

[3] *See Kaprelian v. Texas Woman's Univ*., 509 F.2d 133, 139 (5th Cir. 1975). *Cf. Reeves v. Claiborne Cty. Bd. of Educ*., 828 F.2d 1096, 1099 (5th Cir. 1987) ("The initial inquiry under the *Mt. Healthy* test is whether the statements made … by the public employee are directed to matters of public concern *or are otherwise protected by the first amendment*.") (emphasis added).

Appellees do not mention that the Supreme Court made clear in *Garcetti* it was ***not*** deciding a case involving "academic scholarship or classroom instruction," nor altering established law protecting them.  547 U.S. at 425 ("We need not, and … do not, decide whether [our] analysis … today would apply" to "speech related to scholarship or teaching."), or that subsequent cases have stressed "*Garcetti* does not—indeed, consistent with the First Amendment, cannot—apply to … 'the official duties' of a teacher and professor."  *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014); *Adams v. Trustees of Univ. of N.C.-Wilmington*, 640 F.3d 550, 561 (4th Cir. 2011) (*Garcetti* inapplicable in "academic context of a public university").  *See also Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 680 (6th Cir. 2001) ("argument[s] that teachers have no First Amendment rights when teaching, or that the government can censor teacher speech without restriction, [are] totally unpersuasive").  *See* Br. 31-32, 36-39 (discussing academic freedom cases); *Amici* Br. of National Ass'n of Scholars 6-12 (discussing *Garcetti*'s irrelevance to academia).

The few cases Appellees cite are not to the contrary.  *Williams v. Dallas Independent School District*, 480 F.3d 689, 694 (5th Cir. 2007) (cited Opp. 30-31), did not involve higher education or academic speech, but rather an athletic director's memo about management issues he claimed to have written "as a 'father' and 'taxpayer.'"  Another case Appellees cite, *van Heerden v. Board of Supervisors of Louisiana State University*, 2011 WL 5008410 (M.D. La. Oct. 20, 2011)

(cited Opp. 17), explained that *Williams*, "while related to education, did not implicate [] academic freedom." *Id.* at \*4. The same is true of all cases Appellees cite.[4] Appellees also neglect to mention that other cases they cite ***denied*** defenses under *Garcetti* where speech was deemed protected by the First Amendment.[5]

Appellees allude to the balancing test in *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), but make no attempt to apply it (just as the District Court failed "to scrutinize the reason for the discipline," ROA.1335-1336). *See* Opp. 37. Appellees and the District Court both are wrong, but for separate reasons: Appellees fail to understand or address *Garcetti*'s limits and the First Amendment's protections of academic speech, while the District Court correctly held academic speech is protected, but erroneously concluded Dr. Buchanan's speech is not, by ignoring the record. Appellant's brief fully discussed this failure

---

[4] *Davis v. McKinney*, 518 F.3d 304 (5th Cir. 2008) ("Davis was the IS Audit Manager") (cited Opp. 30); *Caleb v. Grier*, 598 F. App'x 227 (2015) (cited Opp. 31); *Elizondo v. Parks*, 431 F. App'x 299 (5th Cir. 2011) (Elizondo "work[ed] as a Business Development Specialist") (cited Opp. 32); *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 466 (5th Cir. 2014) ("Cutler [was] Director of Art Galleries") (cited Opp. 32).

[5] In *Cutler*, for example, the court held a former state university art gallery director was terminated in retaliation for protected speech, and that defendants could not claim qualified immunity. 767 F.3d at 473. *Davis* denied a *Garcetti* defense for speech in which a state university employee acted as a whistleblower. 518 F.3d at 316-17.

to consider the record and the related misreading of the case law, *see* Br. 32-39, but Appellees offer no response.

### B.    LSU's Anti-Harassment Policies Are Facially Invalid

In defending LSU's policies, Appellees fail to make a single argument analyzing their specific provisions, refuse to engage on the applicable standard of constitutional review, and do not cite a single case on the constitutionality of anti-harassment policies. Opp. 34-36.[6] Appellees' facial validity argument boils down to a single conclusory sentence: "LSU's policy prohibiting certain speech 'so offensive to a reasonable person' is neither unconstitutionally overbroad or vague." Opp. 36. And apart from quoting First Amendment boilerplate in a few Supreme Court cases, the only authority cited is *Munn v. City of Ocean Springs*, 763 F.3d 437 (5th Cir. 2014). *Id.*

Appellees do not explain the relevance of *Munn*, which says nothing about content-based regulation of campus speech. *Munn* involved a municipal anti-noise ordinance that merited only intermediate constitutional scrutiny, because such laws are content-neutral. 763 F.3d at 438-49. *Compare Ward v. Rock Against Racism*,

---

[6] Appellees assert (without citing authority) that Dr. Buchanan lacks standing, but as this Court held in *Esfeller v. O'Keefe*, 391 F. App'x 337, 340 (5th Cir. 2010), affected parties clearly have Article III standing to challenge university policies under which they were terminated, to remove any blemish on their records. Additionally, because Dr. Buchanan seeks reinstatement, she has standing to challenge future application of LSU's policies to herself or others within the university community. *See* ROA.1344. *See also supra* note 1.

491 U.S. 781, 791 (1989) (content-neutral noise regulation justified "without reference to the content of the regulated speech").  As explained in the opening brief, anti-harassment speech codes are viewpoint-based regulations that must satisfy strict scrutiny, and any regulation of "offensive" speech is presumptively unconstitutional.  Br. 16-22; *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) (Supreme Court has held "time and again … 'public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some hearers'") (quoting *Street v. New York*, 394 U.S. 576, 592 (1969)).  Yet Appellees nowhere suggest LSU's policies could withstand strict scrutiny.  Br. 24 (failure to apply strict scrutiny is reversible error).

Even were *Munn* applicable, Appellees' argument fails by its own terms.  They assert "LSU's policies including the objective standard of a reasonable person are constitutional" but do not discuss the specific policies.  Opp. 36.  PS-95 contains no "reasonable person" standard, and prohibits any "unwelcome" speech "of a sexual nature," including "suggestive comments, offensive language or display of sexually oriented materials, obscene gestures, and similar sexually oriented behavior of an intimidating or demeaning nature."  ROA.488.  It is entirely subjective.  Only PS-73 states that regulated speech must be "so offensive to a reasonable person" as to constitute harassment, ROA.483, but this limit is illusory because PS-73 (like PS-95) encompasses speech that has "the purpose *or effect* of …

creating" a "hostile or offensive working environment." ROA.484 (emphasis added). This is a fatal defect. *See Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 210-11 (3d Cir. 2001); Br. 25-30.

In addition to everything else, *Munn* involved only a vagueness challenge to a content-neutral noise regulation, and said nothing about overbreadth. Thus, its holding that "unreasonable noise" may be subjected to time, place, and manner regulations based on "a reasonable person of normal sensitivities" standard, *Munn*, 763 F.3d at 438-39, says nothing about the validity of overly broad speech restrictions. *See* Br. 17-20 & n.3 (explaining the difference between constitutional vagueness and overbreadth). Here, by contrast, PS-73 and PS-95 are overbroad, because "scenarios in which [their restrictions] may be implicated are endless." *McCauley v. University of V.I.*, 618 F.3d 232, 251 (3d Cir. 2010); Br. 25-30. This Court should thus find them facially invalid.

### C.    LSU's Policies Are Unconstitutional As Applied to Dr. Buchanan

Appellees' analysis of the as-applied First Amendment challenge similarly lacks substance. As with the facial challenge, Appellees respond to none of the cases or analyses in Appellant's brief, and merely repeat their erroneous argument under *Garcetti* that academic speech "is not protected by the First Amendment." *Compare* Br. 31-48 with Opp. 36-37. And the few points Appellees choose to make are internally contradictory. For example, they cite *Pickering* to argue that,

in school contexts, teachers' interests must be "balanced" with those of the public employer, Opp. 37, which makes no sense if teachers have no rights to "balance."

Despite its brevity, tracking through Appellees' argument does provide a roadmap for understanding both the weakness of their position and the District Court's reversible error. *First*, contrary to Appellees' misreading of *Garcetti*, the First Amendment protects academic speech, and speech touching on a professor's pedagogical methods is inherently a matter of public concern. Br. 31-32. *See supra* § II.A. *Second*, the District Court erroneously ignored record evidence that supported Dr. Buchanan's pedagogical purposes for her speech, and Appellees declined to address this issue *at all*. Br. 32-36. *Third*, notwithstanding their misunderstanding of *Garcetti*, Appellees seem to suggest *Pickering* requires courts to balance professors' First Amendment interests against those of public employers, yet the District Court conducted no such analysis, ROA.1335-1336, which by itself is reversible error. Br. 36.

Add to this that Appellees cite no case law that actually supports their position, and the reasons for reversal are obvious. Appellees point to *Netherland v. City of Zachary*, 626 F. Supp. 2d 603 (M.D. La. 2009), a public forum case that has no direct application here. Opp. 36. However, separate from forum analysis, the *Netherland* court affirmed two basic First Amendment principles that thoroughly undermine Appellees' position. First, it confirmed that content-based speech regu-

lations must satisfy strict scrutiny. *Netherland*, 626 F. Supp. 2d at 608. Second, it stressed that speech "cannot be restricted simply because it causes serious offense," and held the ordinance at issue was unconstitutional as applied, because it was used to sanction "annoying" and "offensive" speech. *Id.* ("The government 'may not prohibit the verbal or nonverbal expression of an idea merely because society finds [it] offensive or disagreeable.'") (quoting *Texas v. Johnson*, 491 U.S. 397, 398 (1989)). Sounds like this case.

## III. THERE ARE NO IMMUNITY, PROCEDURAL, OR SIMILAR GROUNDS THAT BAR REVERSING THE DISTRICT COURT

### A.    Qualified Immunity Does Not Protected Appellees

Appellees admit that qualified immunity protects State actors' discretionary functions only if their conduct does not violate constitutional rights that are sufficiently well-established that they would be known by reasonable officials at the time of challenged conduct,[7] but then fail to properly apply that bedrock law. Dr. Buchanan's First Amendment rights were violated, as shown above and in Appellant's brief, and Appellees fail to respond. *See supra* 5-13. Appellees rely on a flawed reading of *Garcetti* to argue Dr. Buchanan has no First Amendment rights, but have no response to controlling Fifth Circuit law to the contrary. Br. 49 (citing *Cooper*, 611 F.2d at 1113; *Kaprelian*, 509 F.2d at 139). *See also supra* § II.A.

---

[7]  Opp. 21 (citing *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)); *see also id.* 23 (citing ROA.23, 25, ¶¶ 54, 65). *Compare* Br. 48 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). *See also generally* Opp. § III.C.

Moreover, LSU's own policies preclude feigning ignorance of clearly established law, for if university professors are like any other public employee, PS-73 and PS-95 would have no need to state they do "not intend[] to infringe [] constitutionally guaranteed rights [or] academic freedom."  ROA.483, 487.

Otherwise, Appellees argue that their actions were reasonable because they purportedly followed federal policy, Opp. 22-23, and the individual defendants pursued a series of discrete actions which, viewed in isolation, ostensibly violated no rights.  *Id.* § III.C.2.a-d.  These defenses are unavailing.

### 1.    **"Federal Policy" Cannot Confer Qualified Immunity**

Arguments that defendants "followed the affirmative guidance of the federal government" cannot stake a claim to qualified immunity, and are wrong as a matter of law.  Opp. 22-23.  As Appellant's brief explained, above all else—including federal agency interpretations of statutory law—the First Amendment controls, and federal policy cannot immunize state actors, as such pronouncements are valid only if they avoid violating the Constitution.[8]  The U.S. Department of Education's "guidance" purporting to be "'a "blueprint" for campus anti-harassment policies'" is no exception.  Opp. 22-23 (citing ROA.11, ¶ 1).  The Supreme Court has been clear that "the contention that the State has a compelling interest in complying with

---

[8]  Br. 30 (citing *Rodriguez v. Maricopa Cty. Cmty. Coll. Dist.*, 605 F.3d 703, 709 (9th Cir. 2010); *Saxe*, 240 F.3d at 205-06; *Miller v. Johnson*, 515 U.S. 900, 923 (1995)).

whatever [] mandates [DOJ] issues" must be rejected.  *Miller*, 515 U.S. at 922.  *See also United States v. Nevares-Bustamante*, 669 F.3d 209, 214 n.1 (5th Cir. 2012) (agency "commentary 'is authoritative *unless it violates the Constitution*'") (Haynes, J., concurring) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)) (emphasis added).  Appellees do not rebut any of this authority.[9]

Appellees cite *Waters v. Churchill*, 511 U.S. 661, 668 (1994), Opp. 22, a case that only addressed whether, when government employers sanction employees based on speech, the nature of that speech should be determined by a fact-finder, or analyzed based simply on what the employer believed was said.  511 U.S. at 668-71, 675-78.  This in no way translates into a broader principle that "[a]ctions consistent with federal policies are reasonable *per se*" (as Appellees assert), Opp. 22, or supports qualified immunity based on an asserted belief that Buchanan's speech violated then-prevailing federal policy.  *Id.*[10]  Quite to the contrary, *Waters* states

---

[9]  Appellees also overlook how the Department of Education is revisiting the policies on which they rely, *see*, *e.g.*, www.cnn.com/2017/09/07/politics/betsy-devos-education-department-title-ix/index.html, which only highlights that agency guidance is not positive law that confers qualified immunity from constitutional violations.  Nor do Appellees address how members of this Court had questioned the constitutionality of the prior federal policy.  *See* Br. 29 n.9 (citing *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 476 n.3 (5th Cir. 2013) (Jones, J., dissenting)).

[10]  *Waters* would be relevant only if there were questions about *what* Dr. Buchanan was supposed to have said, even as to the limited subset of interactions that ultimately served as a basis for Reinoso's purported finding of sexual harassment.  *See* Br. 7, 11, 40-43. But if that were the case, it would only support revers-

the "basic First Amendment principle" that "[g]overnment action based on protected speech may under some circumstances violate the First Amendment *even if the government actor honestly believes the speech is unprotected*." 511 U.S. at 669 (emphasis added).

Appellees also cite *Harris v. City of Hammond*, 2008 WL 4469112 (E.D. La. Sept. 30, 2008) (citing *Paul v. Davis*, 424 U.S. 693, 712 (1976)), to argue "clearly established law [held] disciplinary action could be imposed for violations of harassment policies." Opp. 22. But *Harris* has nothing to do with disciplinary action, harassment standards, or anything relevant to federal policies or guidance (or anything else in this appeal). *Waters* and *Harris* neither stand for the broad propositions Appellees advance, nor contradict the case law in Appellant's brief.

Bottom line: *in all cases* where courts invalidated university anti-harassment codes, schools claimed they were seeking to implement federal mandates, yet that did not avoid the constitutionally compelled outcome.[11] Not only do Appel-

---

ing the grant of summary judgment. *See id*. 16 (summary judgment requires no genuine dispute of material fact) (citing cases and Fed. R. Civ. P. 56(a)).

[11] *E.g.*, *Saxe*, 240 F.3d at 204, 214-17 (striking down policy designed to implement Title VII and IX "harassment" using standard "similar to that" in the federal law); *Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ.*, 993 F.2d 386 (4th Cir. 1993); *Bair v. Shippensburg Univ.*, 280 F. Supp. 2d 357, 371-72 (M.D. Pa. 2003); *Booher v. Board of Regents, N. Ky. Univ.*, 1998 WL 35867183, at *7 (E.D. Ky. July 22, 1998), *appeal dismissed*, 163 F.3d 395 (6th Cir. 1998); *UWM Post, Inc. v. Board of Regents of Univ. of Wis. Sys.*, 774 F. Supp. 1163, 1181 (E.D. Wis. 1991). *See also*, *e.g.*, *DeJohn v. Temple Univ.*, 537 F.3d 301, 316 n.14

lees ignore these cases, they forget that Appellees themselves, in recommending Buchanan's dismissal, handed the Board constitutional analyses that showed their own actions and policies were suspect under the First Amendment. *See* Br. 12 n.1 (citing ROA.1080-1195, 1182-1187). There is accordingly no basis to now claim a "reasonable" belief that PS-73 and PS-95, and Appellees' application of them, could be constitutional based on "federal policy."

### 2. Listing Discrete Actions By Each Appellee Cannot Vitiate Violations of Clearly Established Constitutional Rights

Appellees seek to focus the qualified immunity standard on discrete actions each of them took as if in isolation, to claim they violated no clearly established rights. Opp. 24-29 (enumerating actions). This Court has made clear, however, that such disaggregation is not relevant where defendants' actions together contributed to an unconstitutional result. It has explained that all that is needed is case law providing "clear warning that terminating [] on the basis of [] speech … would violate [the] First Amendment" in the circumstances. *Cutler*, 767 F.3d at 473 (cited Opp. 32). Case law supporting this proposition was cited throughout the opening brief. *Supra* § II; *see also* Br. 25-32, 44-48. Appellees simply ignore that

---

(3d Cir. 2008). *Cf. Rodriguez*, 605 F.3d 703 (rejecting Title VII claims based on allegedly harassing speech).

authority, and instead attempt to show each particular act did not violate clearly established rights, while citing no cases whatsoever.[12]

This tactic seems to be an outgrowth of confusion over how certain First Amendment violations, such as retaliation claims, may be actionable as discrete acts, and are not always subject to "'continuing violation' arguments." Opp. 16-17 (citing *van Heerden*, 2011 WL 5008410, at *8). Not only is this confused as a matter of qualified immunity law, it ignores how Appellees inaptly injected continuing violation concepts into this case. To be clear: this case involves a single course of conduct to enforce an unconstitutional policy through multiple phases of bureaucracy toward a termination that violated the First Amendment, in which all Appellees participated. It involves ***no*** retaliation claims. *See* Br. § IV.B, as reinforced *infra* 21-22, 24-25. Appellees never respond to this, but only echo the erroneous holding below (albeit without acknowledging they are doing so). *Compare* Opp. 16-17 *with* ROA.1315-1317 (each citing *van Heerden*, 2011 WL 5008410).

Each Appellee was instrumental in applying LSU's unconstitutional policies to terminate Dr. Buchanan. Reinoso issued sexual harassment "findings" reciting things Dr. Buchanan was alleged to have said—most of which did not constitute or had nothing to with sexual harassment (including some that he admitted were

---

[12] Each set of enumerated acts by Appellees is unaccompanied by citation to authority, let alone cases indicating their actions satisfied constitutional constraints. *See* Opp. 24-29.

uncorroborated), with his undifferentiated "findings" forming the basis for all decisions culminating in dismissal.[13]  Dean Andrew, in addition to rejecting the pedagogical bases for the speech at issue and asking the Provost to convene a PS-104 Faculty Committee to effectuate the Dean's request for dismissal,[14] urged Alexander to reject the Committee recommendation and ask instead that the Board dismiss Dr. Buchanan.[15]  HRM Vice Chancellor Monaco, in addition to ratifying Reinoso's report, also was instrumental in urging Alexander to recommend Dr. Buchanan's dismissal to the Board, ROA.323-324, 329-331, 446-447, 1309-1310, and personally presented the HRM and Faculty Committee findings to the Board, along with a packet of material, in support of termination.  ROA.448, 1080-1195. And President Alexander, of course, recommended that LSU's Board dismiss Dr. Buchanan, which it did.  Br. 11-12, 42 (citing ROA.326-327, 338-340, 341, 881-882, 907, 1078, 1309-1310, 1312).[16]  Appellees together undertook these actions to

---

[13]  Br. 7-9, 11, 41-44 & nn.16-19 (citing ROA.821-822, 830-831, 833-837, 839-843, 845, 847, 862-875, 1304-1305; ROA.881-882 (Alexander's reliance on parts of report not involving sexual harassment); ROA.1035, 1040-1042 (Andrew's reliance on portions of report not involving sexual harassment)).

[14]  Br. 8-9 (citing ROA.37, 474-480, 1034-1038, 1304-1306, 1040-1042).

[15]  ROA.323-324, 446-447, 1309-1310.  This was sufficient, the District Court held, to have "caused" Dr. Buchanan's termination.  ROA.1331-1332.

[16]  As with Andrew, the District Court held this sufficed to have "caused" the termination decision.  ROA.1331-1332.

enforce LSU's sexual harassment policies against Dr. Buchanan's constitutionally protected speech.[17]

### 3. Qualified Immunity Cannot Support Summary Judgment on All of Dr. Buchanan's Claims

The Appellees' qualified immunity arguments cannot avoid reversal for the further reason that it is a defense only to damages. Dr. Buchanan also seeks declaratory and equitable relief (including reinstatement and back-pay), ROA.1312, which qualified immunity does not affect. *See*, *e.g.*, *Cooper*, 611 F.2d at 1113. For this, and all the above reasons, the District Court erred to the extent it granted Appellees summary judgment in any regard based on qualified immunity.[18]

---

[17] It may help clarify matters to examine Appellees' actions not in the disaggregated, largely chronological presentation in their brief, but to track backward from the Board's decision, to see how each Appellee's conduct was integral to that unconstitutional result. As outlined in the text, the Board would not have voted to dismiss without Alexander's recommendation and Monaco's presentation; Alexander would not have made his recommendation absent Andrew's and Monaco's (and others') post-hearing push and the Faculty Committee's findings; and the Committee's findings relied on a report Reinoso authored and Monaco approved, that was riddled with unexplained inclusions of things Buchanan was alleged to have said that had nothing to do with sexual harassment. Nor would the Committee have convened in the first instance without Andrew's reliance on Reinoso's report and request to the Provost. *See also* Br. § III.B (discussing flaws in sexual harassment finding that infected all ensuing steps of termination process).

[18] Arguments that "sovereign immunity bars damage claims against state officials," who "are not 'persons' ... under Section 1983," Opp. 19-20, are irrelevant. As correctly held below, Dr. Buchanan "is not barred by the Eleventh Amendment from bringing suit ... for prospective, injunctive relief against individual state officials ... in their official capacities" and "it is well established ... that a suit against a state officer in his ... individual capacity for money damages is not

## B.    Appellees Are Responsible for Dr. Buchanan's Constitutional Injuries

Appellees are wrong in suggesting the judgment can be affirmed on grounds that Dr. Buchanan sued the wrong parties.  Opp. § I.A-B.  As an initial matter, the District Court held Alexander and Andrew were proper defendants, ROA.1331-1332, and having not appealed the point, Appellees cannot have this Court revisit it.  *See Murrell*, *supra* note 1.  As to the others, Appellees' claims are incorrect on the law, and cannot be sustained.

First, the only cases Appellees cite to support their argument are *Culbertson v. Lykos*, 790 F.3d 608 (5th Cir. 2015), and *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595 (5th Cir. 2001).  These are the same cases the District Court analyzed in ultimately holding—correctly—that officials who advance recommendations to terminate on improper bases (or, as here, unconstitutional ones) can be liable when a decision-making body adopts the recommendation.  ROA.1318-1320.  Appellees do not—and cannot—refute this authority, or rebut the opening brief's showing on this point.  *See* Br. 54-56.

Where the District Court erred regarding Monaco and Reinoso, and where Appellees are wrong as to all defendants, is in misunderstanding the nature of Dr.

---

a suit against the state for … Eleventh Amendment immunity."  ROA.1314-1315 (citing Supreme Court and Fifth Circuit cases) (internal quotation marks omitted).  As elsewhere, Appellees do not address this holding, and as they did not cross-appeal, cannot obtain this Court's reversal on the issue.  *Murrell*, *supra* note 1.

Buchanan's claim, and misconstruing each Appellees' role in her termination.  As noted, school officials who recommend dismissing an employee (or other sanctions) can be liable if the recommendation rests on an improper purpose and there is a causal link between it and the ultimate decision.[19]  Fixating on whether defendants were "decision-makers," *e.g.*, Opp. 14, treats this case as if it involves First Amendment retaliation, when it in fact does not.  Br. 52, 54-55.  This led both the District Court and Appellees to focus on individual actions by the Appellees, to assess each one as a discrete retaliatory act.

But what is at issue here is whether each Appellee played a role in the course of conduct by which the Board implemented recommendations Appellees made to enforce unconstitutional policies.  Appellees neither respond to this nor attempt to rebut the fact that "[t]he record is undisputed that the Board exercised no independent judgment," but rather "acted [] solely on Appellees' selected evidence and recommendations" to fire Dr. Buchanan.  Br. 55-56.  *See also id*. 56 (citing *Powers v. Northside Indep. Sch. Dist.*, 143 F. Supp. 3d 545, 550 (W.D. Tex. 2015)).

Appellees instead focus on individual acts of each defendant (as did the District Court), but to no avail.  As the District Court found, and as outlined above, *supra* 18-21, Andrew recommended dismissal to the Provost, and Alexander was

---

[19]  *Supra* 21; Br. 55 (citing *Beattie*, 254 F.3d at 603; *Culbertson*, 790 F.3d at 625-26; *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 758 (5th Cir. 1986), *aff'd in part, remanded in part*, 491 U.S. 701 (1989)).

directly responsible for the recommendation to terminate that the Board adopted. ROA.1331-32; *accord* Opp. 14.   Monaco is equally culpable.   While Appellees focus on his approval of Reinoso's report, Opp. 14, and the District Court held it was "not alleged … Monaco caused or effected [the] termination," ROA.1322, this is just more disregard of the record.   *See*, *e.g.*, Br. § III.A.2.a; *id*. 44.   It is undisputed Monaco was every bit as instrumental as Alexander in convincing the Board to fire Dr. Buchanan, as he presented the recommendation to that effect, along with the packet of materials on which the Board based its decision.   *See supra* 19.

Appellees merely advance a "heads-I-win-tails-you-lose" scenario where ***no*** potential LSU defendant could be liable for damages for violating Dr. Buchanan's First Amendment rights.   Had Dr. Buchanan sued only LSU's Board, the university no doubt would have claimed Eleventh Amendment immunity and that it cannot be sued under 42 U.S.C. § 1983.[20]   Meanwhile, here, because Dr. Buchanan sued LSU officials in their individual capacities, Appellees claim they were not responsible for the actual decision that violated her First Amendment rights.   Opp. 14-19. Such a total bar to damages for constitutional violations is clearly inconsistent with Congress' intent, and cannot gain traction here.   *See, e.g.*, *Carey v. Piphus*, 435

---

[20] *See* Appellee's Br. § III; *see also*, *e.g.*, *Wiggins*, 710 F. App'x 625; *Robinson v. Board of Sup'rs of La. State Univ.*, 2017 WL 4049820 (E.D. La. Sept. 13, 2017); *Richard v. Board of Sup'rs of La. State Univ.*, 960 So. 2d 953, 965-66 (La. Ct. App. 2007).

U.S. 247, 254-56 (1978); *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *Dobson v. Camden*, 705 F.2d 759, 764 (5th Cir. 1983), *reh'g granted on other grounds*, 725 F.2d 1003 (5th Cir. 1984).

Finally, Appellees' claim, advanced without citation to authority, that effective relief cannot be awarded, Opp. § I.B, is at odds with LSU's stated policy.  In particular, PS-36 controls hiring tenured faculty, vests authority to select faculty with the LSU department making the hire, and provides roles for each of the Dean, HRM, and LSU's President.  This grants authority to Andrew, Monaco and Alexander (or successors) in their respective official capacities to reinstate Buchanan.  This was explained below, ROA.305, 681 (citing, *inter alia*, *Cooper*, 611 F.2d at 1113-14 (upholding equitable claims for reinstatement and back-pay)), but like much of the briefing here, went unaddressed by Appellees.

## C.   None of Dr. Buchanan's Claims Are Time-Barred

Appellees' actions culminated in Dr. Buchanan's termination within the one-year statute of limitations for First Amendment claims, so there can be no argument her claims are "prescribed."  Opp. § II.  As explained in the opening brief, the District Court erred in holding the claims against Andrew, Reinoso, and Monaco are time-barred, because in rejecting what it viewed as an "attempt to apply the continuing violation theory," it treated this as a case of First Amendment retaliation, ROA.1316-1317, which it is not.  *See* Br. § IV.C (citing *Beattie*, 254 F.3d at

603; *Culbertson*, 790 F.3d at 625-26; *Jett*, 798 F.2d at 758). *See also supra* 18. Rather, claims arising from application of an unconstitutional policy need only establish it was enforced within the prescription period, as occurred here.[21] Appellees echo the District Court's rationale, but fail to address—let alone rebut— the opening brief's showing of why that reasoning was erroneous. Opp. § II.

Like the District Court, Appellees rely on *van Heerden*, 2011 WL 5008410, citing it for the same incorrect application of the "continuing violation" theory. Opp. 17. But *van Heerden* indicates that when a termination that serves as a basis for an alleged constitutional violation occurs within the statute of limitations, and claims are directed at defendants who "were behind" the firing, prescription is not ordinarily an issue. 2011 WL 5008410, at *7-8. Here, LSU's termination of Dr. Buchanan has always been cited as the offending action, and it is undisputed it fell within the statute of limitations. *See* ROA.1312, 1316.

Even if Appellees' theory were correct, their tacit admission that claims against Alexander are timely, *see* Opp. § II, sinks arguments regarding Monaco and Andrew. As explained in Appellant's brief, it is undisputed Monaco had as

---

[21]  Br. § IV.C (citing *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2228 (2015); *Tam*, 137 S. Ct. at 1767).

much a role in imploring the Board to dismiss Buchanan as did Alexander,[22] and

Andrew lobbied Alexander to reject the Faculty Committee recommendation. All

of these actions occurred within the prescription period. *See* Br. 54 n.25. *See also*

*supra* 18-20. Appellees fail to even acknowledge these dispositive facts. Their

statute of limitations defense must be rejected, and the District Court's finding in

that regard for Andrew, Reinoso, and Monaco must be reversed.

## CONCLUSION

For the foregoing reasons, this Court should reverse the decision of the

District Court.

RESPECTFULLY SUBMITTED this 12th day of June, 2018.


By____s/ Robert Corn-Revere_____
    Robert Corn-Revere
    Ronald G. London
    Lisa B. Zycherman
    DAVIS WRIGHT TREMAINE LLP
    1919 Pennsylvania Ave., N.W. - Suite 800
    Washington, DC  20006
    (202) 973-4200

    *Counsel for Plaintiff-Appellant*

---

[22] It is thus inaccurate to claim that "[e]ach factual allegation regarding … Monaco was a discrete act which occurred prior to the March 9, 2015 Faculty Committee hearing[.]" Opp. 17.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on June 12, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.



s/ Robert Corn-Revere
Robert Corn-Revere

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B) because it contains 6,359 words, as determined by

the word-count function of Microsoft Word, excluding the parts of the brief

exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit

Rule 32.2.

2.      This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

Appellate Procedure 32(a)(6) because it has been prepared in a proportionally

spaced typeface using Microsoft Word in 14-point Times New Roman font.


　　　　　　　　　　　　　　　s/ Robert Corn-Revere
　　　　　　　　　　　　　　　Robert Corn-Revere